UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LYNN M. WHITLOCK,

        Plaintiff,

   v.

WILLIAMS LEA, INC.,

        Defendant.

No. 16 CV 6347

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Lynn Whitlock is a woman who worked as a senior account manager for defendant Williams Lea, Inc., and she was paid less than a male senior account manager. Whitlock sued Williams Lea under the Equal Pay Act, claiming that the pay discrepancy was discriminatory. Williams Lea now moves for summary judgment. For the reasons explained below, the motion is granted.

I.    **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there is no such dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and

for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (citation omitted).

## II. Background

### A. Local Rule 56.1

Williams Lea moves to strike many of Whitlock's responses to its statement of material facts for her failure to comply with the requirements of Local Rule 56.1. [58]. After Williams Lea filed its motion to strike, Whitlock acknowledged that many of its points were "well taken" and requested leave to file an amended response and a separate statement of additional facts. [61].[1] I denied her request.

The biggest issue is that Whitlock disregarded the rule's requirement that she submit a separate statement of additional facts, Local Rule 56.1(b)(3)(C), opting instead to assert her facts in her responses to Williams Lea's. For example, in response to Williams Lea's statement that Whitlock was a senior account manager in Chicago during her employment at Williams Lea, Whitlock says that she does not dispute the fact but goes on to append an extra (and immaterial) fact about what her employment has been since then. [51] ¶ 4; [56] ¶ 4. In more egregious examples, the response's extra facts take up whole pages. *See, e.g.*, [56] ¶¶ 13, 37. The problem with this is that it undermines the point of Local Rule 56.1, which is to inject some efficiency into the summary judgment process. Isolating the facts in dispute in a fair and efficient manner requires organization. If Whitlock had followed the rules and listed her asserted facts separately, Williams Lea would have had an opportunity to

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings.

respond, and I could have seen which of them are disputed. But by slipping her facts into her responses to Williams Lea's facts, Whitlock deprived Williams Lea of an opportunity to respond. It also makes it impossible for me to police the number of additional facts that Whitlock has submitted, which is limited to 40 absent prior approval. *See* Local Rule 56.1(b)(3)(C).

Because of Whitlock's noncompliance, I disregard any facts asserted in her responses to Williams Lea's stated facts. The result is severe, since Whitlock bears the burden of proving her claim and did not submit a statement of additional facts, so she must now rely on her opponent's asserted facts to meet her burden. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 896 (7th Cir. 2018). But "[i]f parties fail to comply with local rules, they 'must suffer the consequences, harsh or not.'" *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014) (citation omitted). *See also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–810 (7th Cir. 2005). Yet Whitlock's responses are not entirely fruitless, since they may still controvert Williams Lea's facts.

Williams Lea points out that Whitlock's responses are noncompliant in some other respects, like they are argumentative or lack evidentiary support. I will only consider properly supported facts to be controverted if Whitlock has presented controverting evidence.

**B. Facts**

Williams Lea is a company to which other companies outsource certain business processing work. [51] ¶ 1. To its law firm clients, Williams Lea offers several service lines, including document production, reprographics, mail functions,

messenger services, reception services, and others. [51] ¶ 1. Williams Lea employed senior account managers to oversee these services. [51] ¶ 2. Whitlock is a woman[2] who worked as a senior account manager at Williams Lea in Chicago. [51] ¶¶ 3–4. From 1999 to 2009, Whitlock was responsible for overseeing the document production service line for Sidley Austin LLP. [51] ¶¶ 23–24. In 2009, Whitlock was terminated and then rehired to oversee the same service line for McDermott Will & Emery LLP. [51] ¶¶ 25–26. Throughout her employment, Whitlock only ever serviced one client at a time, and she supervised about 25 employees. [51] ¶¶ 27–28. From June 2013 to July 2015, Whitlock managed an annual revenue of about $2.5 million. [51] ¶ 29.

During that time, Whitlock was paid less than Jeremy Phelps, a man who worked as a senior account manager for Williams Lea. [51] ¶¶ 5, 49–55. Phelps worked in Houston until June 2015, when he transferred to Chicago. [51] ¶ 5. At any given time in his employment, Phelps was responsible for multiple clients and oversaw multiple service lines. [51] ¶ 37. From June 2013 to July 2015, Phelps was simultaneously responsible for six or seven clients and six or seven service lines, supervised about 80 to 100 employees, and managed an annual revenue of about $4.4 million. [51] ¶¶ 38, 40, 44.

In June 2015, Williams Lea suspended Whitlock for allegedly violating its Fair Labor Standards Act policies and then terminated her about a month later. [51] ¶ 35.

---

[2] Williams Lea did not include as one of its facts that Whitlock is a woman—a key part of her Equal Pay Act claim—and, as I explained, Whitlock forfeited her ability to assert her own facts. Nevertheless, it is an undisputed fact. *See* [52] at 5 (Williams Lea's brief describing Whitlock as a woman).

**III. Analysis**

    **A.    Equal Pay Act**

To establish a prima facie cause of action under the Equal Pay Act, Whitlock must demonstrate "a difference in pay for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Lauderdale v. Illinois Dep't of Human Servs.*, 876 F.3d 904, 907 (7th Cir. 2017) (citation omitted). "Equal work" means that the jobs share "a common core of tasks" and that there are no additional tasks that make the jobs "substantially different." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017). If Whitlock establishes a prima facie case, the burden shifts to Williams Lea "to prove some neutral factor that explains the discrepancy in salary." *Lauderdale*, 876 F.3d at 907. Williams Lea concedes that Whitlock was paid less than Phelps. The question is whether they performed equal work on jobs requiring equal skill, effort, and responsibility.

    *1.    Relevant Time Period*

The parties disagree about the relevant time period. The Equal Pay Act prohibits discrimination between employees who work at the same "establishment," 29 U.S.C. § 206(d)(1), and "each physically separate place of business is ordinarily considered a separate establishment." 29 C.F.R. § 1620.9(a). Williams Lea argues that only the months of June and July 2015 are relevant because that is the only time both Phelps and Whitlock worked for Williams Lea in the same physical location. Whitlock responds that Phelps and Whitlock worked at the same "establishment" even when Phelps was working in Houston and Whitlock in Chicago because two

physically separate locations can constitute a single establishment when the locations are controlled by a central authority. *See, e.g.*, *Brennan v. Goose Creek Consol. Indep. Sch. Dist.*, 519 F.2d 53, 58 (5th Cir. 1975) (finding that different schools within one district constitute a single establishment where a central authority was responsible for employment and wages and janitors were often transferred among the schools). Williams Lea did not reply to the argument, so I assume it to be abandoned.

Whitlock does not offer her own position on what the relevant time period is. The complaint alleges that Williams Lea paid Phelps more than Whitlock from June 2013 to July 2015, [1], and that is the only period from which there is salary evidence for them both. [51] ¶¶ 49–55. For that reason, I will consider that to be the relevant time period.

2. *Comparing Whitlock's Job to Phelps's*

Whitlock has not identified any evidence that would permit a jury to find that her job was equal to Phelps's. Both were senior account managers, but it is "the actual job duties performed by each employee" that matters, not their job titles or descriptions. *David*, 846 F.3d at 230. At the broadest level, senior account managers share common general duties of "supervising direct and indirect reports for one or multiple clients across various service lines" and "ensuring delivery of the contract service line(s)." [51] ¶ 2. Even if this were enough to establish a "common core of tasks," Whitlock puts forth no evidence that their jobs were equal in skill, effort, and responsibility. She points only to the fact that all senior account managers are subject to the same performance categories and competencies for their annual review and start with the same base salary range. Those facts are not properly asserted and

6

nevertheless ignore the question of whether the jobs' *tasks* are the same. Without evidence that Phelps and Whitlock did the same work, Whitlock cannot establish a prima facie case. *See McDonald v. Vill. of Palatine, Ill.*, 524 Fed.App'x 286, 289 (7th Cir. 2013) (affirming summary judgment where plaintiff asserted that she did the "same" work as her comparators but "failed to provide an affidavit or any other evidence at summary judgment to substantiate that assertion").

Indeed, the properly asserted facts are to the contrary. There are several differences between Phelps's job and Whitlock's job—Phelps had more clients, oversaw more service lines, managed more revenue, and supervised more employees than Whitlock did. Whitlock disputes that any of these things are true, but she has not put forth any controverting evidence.

### a. Number of Clients and Service Lines

Whitlock was responsible for one client and one service line at a time. [51] ¶¶ 25–26. Phelps testified that during June 2013 through July 2015, he was simultaneously handling about six or seven different clients and six or seven different service lines, including reprographics, mail, hospitality, reception, facilities, records, maintenance, and support. [51] ¶ 38. Phelps's boss corroborated the fact that Phelps handled "a portfolio of client operations" for "multiple clients, multiple client organizations, multiple locations, multiple geographies." [51] ¶ 38; [51-7] at 31:2–11. And indeed, Whitlock herself testified that Phelps handled three to seven different clients each month. [51] ¶ 38; [51-3] at 73:2–6, 169:6–14.

To dispute these assertions, Whitlock points primarily to excerpts from Phelps's performance reviews, [56] ¶¶ 37–38, but they do not contradict the fact that

7

Phelps handled multiple clients and multiple service lines. Whitlock says the reviews show that Phelps only met or fully met expectations but that he never exceeded expectations, which is immaterial to the number of clients and service lines he managed. Whitlock also construes the reviews to mean that "Phelps was serving as a local resource and did not have direct oversight or responsibility for his assigned accounts." [56] ¶ 38. Whether Phelps had "direct" oversight over the accounts does not change the fact that he was responsible for them. To the extent Whitlock's argument is that she had direct oversight over her account and Phelps did not, so she deserves higher pay, that theory is not supported by the facts. And if that were true, it would suggest that their jobs are more different, not more similar. *See Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 771 (7th Cir. 2007) ("[W]hen jobs are heterogenous a suit under the Equal Pay Act is in danger of being transmogrified into a suit seeking comparable pay.").

So, Phelps managed more clients and more service lines than Whitlock did. Whitlock argues that "[h]andling multiple 'office services' service lines is not more difficult, or less difficult, than handling a 'document production' service line," [55] at 4, but that fact is improperly asserted in her brief. Nor does the evidence she relies on support it. Phelps testified that he could not say that one service line was more difficult than another, since both include "tough and complex" tasks, but that does not respond to the question of whether it is more difficult to handle office services for multiple clients. Even if providing the six or seven service lines included under the "office services" umbrella is equal in difficulty to the document production service

8

lines, there is no evidence that managing the "office services" for six or seven different clients simultaneously is equal in complexity to managing the document production service line for one client (or that it is less complex). This difference alone is enough to grant summary judgment to Williams Lea.

### b. Revenue

The service line that Whitlock managed generated about $2.5 million of revenue annually. [51] ¶ 29. Phelps's tasked service lines generated about $4.4 million of annual revenue. [51] ¶ 44. Whitlock again relies on Phelps's performance reviews to argue that Phelps did not "directly" manage or oversee his accounts. [56] ¶ 44. But that does not controvert the fact of how much revenue Phelps's accounts generated. Phelps's accounts generated more revenue than Whitlock's, so he had more responsibility. *See Sims-Fingers*, 493 F.3d at 770 ("[T]he more money the park takes in, the more responsibility the manager's job entails, since he can get into serious trouble if revenue dries up or money is discovered missing from the till."); *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 700 (7th Cir. 2003) (being responsible for more revenue "creates additional pressure and responsibility"). This difference is another independent ground to grant summary judgment for Williams Lea.

### c. Supervisees

Whitlock supervised about 25 employees. [51] ¶ 28. Phelps testified that he simultaneously supervised about 80 to 100 employees. [51] ¶ 40. Whitlock responds that Williams Lea "relies solely on Phelps'[s] memory" to establish the fact. [56] ¶ 40. But Whitlock does not suggest that Phelps is incompetent or did not have personal

knowledge of the approximate number of supervisees—testimonial evidence is evidence. To controvert the fact, Whitlock refers to a document that she says reports Phelps's "average monthly headcount" to be between 11 and 22 people. [56] ¶ 40; [51-16] at 5–6. The document has Phelps's name at the top along with a date range of June 2013 to July 2015, and it lists names, start and end dates, and "sites." [51-16] at 5–6. If the document were a list of Phelps's supervisees, it could controvert Phelps's memory, but Whitlock provides no evidence to authenticate the document or otherwise establish that the document is correct. The only evidence is to the contrary—Phelps states in a declaration that the document does not accurately reflect all his direct and indirect reports and that his deposition testimony about the number of his supervisees was accurate. [51-16] at 2. The fact that Phelps supervised over three times the number of employees that Whitlock did is a significant difference that warrants summary judgment in favor of Williams Lea. *See Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1005 (7th Cir. 2000) (jobs significantly different because of "[t]he additional skill, effort, and headache involved in managing three to six times the number of workers in a more complex employment environment").

Two jobs need not be identical, but they must at least be substantially similar to support an Equal Pay Act claim. *See Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 923 (7th Cir. 2000). Here, Whitlock has offered no affirmative evidence to suggest that her job and Phelps's job were substantially similar. The only appropriately asserted facts are to the contrary. Perhaps the differences that Williams Lea identified are somehow insignificant—like maybe it did not take much effort to

supervise employees, so the difference in the number of supervisees was insignificant to the job—but Whitlock has not provided any such evidence.

### B. Retaliation

In her response brief, Whitlock raises for the first time a claim that Williams Lea fired her in retaliation for reporting "protected activity." [55] at 11–12. Her complaint had no mention of such a claim and does not allege any facts about her termination. [1]. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). If Whitlock wished to amend her complaint to include a retaliation claim, her summary judgment brief was neither the time nor place to do so. *Id.* (affirming denial of leave to amend a complaint due to the form—a footnote in a summary judgment response brief—and timing—when discovery had been closed for over a year).

### IV. Conclusion

Williams Lea's motion to strike [58] is granted in part, denied in part, and its motion for summary judgment [50] is granted. The clerk shall enter judgment on the merits in favor of Williams Lea. Terminate civil case.

ENTER:

                                                  /s/ Manish S. Shah
                                                  Manish S. Shah
                                                  United States District Judge

Date: March 27, 2019